# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46992

STATE OF IDAHO,

   Plaintiff-Respondent,

v.

NICHOLAS KEITH BLYTHE,

   Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, February 2020 Term

Opinion Filed: May 4, 2020

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The district court's judgment of conviction is vacated, the order denying the motion to suppress is reversed, and the case is remanded.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Erik R. Lehtinen argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. John C. McKinney argued.

---

BURDICK, Chief Justice.

Nicholas Keith Blythe appeals his judgment of conviction entered in district court. In September 2018, after the district court denied his motion to suppress evidence obtained during a search of his shoes, Blythe entered a conditional guilty plea to a charge of possession of a controlled substance under Idaho Code section 37-2732(c)(1). On appeal, Blythe argues the district court erred in denying his motion to suppress because the search violated the Fourth Amendment of the United States Constitution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Around 3:00 a.m. on March 12, 2018, two Kootenai County Sheriff's deputies, Boardman and Fanciullo, pulled over a vehicle for speeding and failing to stop at a designated stop line. The owner of the vehicle, Gabriel Parent, was driving and Blythe was a passenger.

1

Deputy Fanciullo approached the vehicle on the driver's side while Deputy Boardman approached on the passenger's side. Deputy Boardman noticed a rolled-up dollar bill on Blythe's lap and a roll of tin foil on the floor at Blythe's feet. Based on his training and experience, Deputy Boardman believed the rolled-up dollar bill was a "tooter," a makeshift device used to smoke illicit drugs burned on a piece of tin foil. Deputy Boardman ordered Blythe out of the car. He patted him down and removed several items from his pockets, but found nothing of evidentiary value. As he removed the items from Blythe's pockets, Deputy Boardman stated, "Like I said, you know you're not under arrest—nothing like that, right?" He told Blythe to stand near the back corner of the car and Blythe complied.

Meanwhile, Parent admitted to Deputy Fanciullo that he had about seven grams of marijuana in the car. Deputy Fanciullo asked Parent to step out of the vehicle and Parent complied. Deputy Fanciullo searched Parent for weapons, found a pill in his shoe, handcuffed him, guided him to the hood of his patrol car, and ordered him to wait there.

Deputy Fanciullo returned to the driver's side door of Parent's car and both deputies began searching the vehicle, Deputy Fanciullo on the driver's side and Deputy Boardman on the passenger's side. Still standing by the rear passenger corner of the car, Blythe inquired about potentially being taken to jail by Deputy Boardman, who responded, "We aren't there yet man. Just take it easy bro." As the deputies were searching the car, Deputy Fanciullo asked Deputy Boardman, "You got anything felony?" Deputy Boardman responded, "No" and continued searching. As Deputy Boardman was searching the car, Blythe asked him, "Just in case I am going to jail for something, may I please smoke another cigarette?" Deputy Boardman gave Blythe his cigarettes and lighter back and told him to go stand in front of the patrol car with Parent. A few moments later, Deputy Boardman walked over to where Blythe and Parent were standing and asked about the roll of tin foil in the car. Parent responded that he used to smoke pills using tin foil and that he had not yet cleaned it out of his car.

After returning to Parent's car, Deputy Boardman searched under the passenger seat and found several more rolled up pieces of tin foil with burn marks he believed to be consistent with drug use. Inside one of the rolled up pieces of foil, Deputy Boardman found what he believed was a "usable amount" of heroin.

As Deputy Boardman continued to search the vehicle, Deputy Fanciullo asked him, "What do you think?" Deputy Boardman responded that he found "at least a point" of heroin

under the passenger seat. "Was that this guy's?" Deputy Fanciullo asked while pointing to the passenger seat with the beam of his flashlight. "It was under the seat right here," Deputy Boardman responded while pointing to the area underneath the passenger seat, "He told me that he smokes pills off tinfoil. I say we *Mirandize* them, ask them about it a little bit, it's up to you." Deputy Fanciullo told Deputy Boardman that he would put Parent in the back of the patrol car in order to separate him and Blythe for questioning. Deputy Boardman agreed and said, "we'll go from there."

While Deputy Boardman was still searching the car, Deputy Fanciullo put Parent in the back of the patrol car, explaining: "[Y]ou're not under arrest, alright? I'm just going to warm you up and get you out of here." After putting Parent in the car, Deputy Fanciullo walked back over to Deputy Boardman and the following exchange took place:

Deputy Fanciullo:    How well did you check your guy?
Deputy Boardman:     Not, I did not. Just a—
Deputy Fanciullo:    You've got good reason to check him pretty good right now.
Deputy Boardman:     Oh yeah.
Deputy Fanciullo:    Kick his shoes off.
Deputy Boardman:     Yup.

Deputy Boardman finished searching the car, walked over to where Blythe was still standing at the front of the patrol car and said, "Do me a favor. Can you kick your shoes off for me?" Blythe kicked off his shoes and Deputy Boardman found two baggies containing a brown tar-like substance, which he believed to be heroin, inside one of the shoes. Deputy Boardman handcuffed Blythe, told him he was under arrest for possession of heroin, and read him his *Miranda* rights.

The State charged Blythe with possession of a controlled substance and possession of paraphernalia. Blythe filed a motion to suppress the heroin found in his shoe, arguing the search violated his rights under the Fourth Amendment of the United States Constitution and Article I, section 17 of the Idaho Constitution. In response, the State contended that both the consent and search-incident-to-arrest exceptions to the warrant requirement applied.

The district court held an evidentiary hearing. Deputy Boardman testified that there were video recordings from the on-body video cameras of both deputies, which the court admitted into evidence. At a later hearing, the State again argued that the search of Blythe's shoes was justified under both the consent and search incident to arrest exceptions to the warrant requirement. The district court rejected the consent argument, reasoning that, under the circumstances of the stop,

Deputy Boardman's statement to Blythe to "kick off his shoes" was an order, not a request. The State does not contest the district court's decision regarding the consent exception on appeal. The district court further determined that the search was a valid search incident to arrest and denied the motion to suppress from the bench.

Blythe entered a conditional guilty plea to possession of a controlled substance, reserving his right to appeal the district court's decision denying his motion to suppress. The possession of paraphernalia charge was dismissed. The district court sentenced Blythe to a term of four years of imprisonment with two-years fixed, suspended the sentence, and placed Blythe on probation for two years. Blythe timely appealed.

## II.    ISSUE ON APPEAL

Did the district court err in denying Blythe's motion to suppress?

## III.    STANDARD OF REVIEW

This Court applies a bifurcated standard of review when reviewing an order granting or denying a motion to suppress evidence. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)). "However, this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id.*

## IV.    ANALYSIS

The district court determined that the search of Blythe's shoes was a valid search incident to arrest because the deputies had probable cause to arrest Blythe at the time they searched him. In reaching its decision, the district court interpreted this Court's opinion in *State v. Lee* to hold that a search incident to arrest is reasonable where a law enforcement officer has probable cause to arrest and the officer has not affirmatively made the decision not to arrest. 162 Idaho 642, 402 P.3d 1095 (2017).

Before the trial court, Blythe argued that the search was improper under both the United States Constitution and the Idaho Constitution. However, on appeal he makes no argument under the Idaho Constitution.[1] Therefore, his challenge arises exclusively under the United States Constitution.

---

[1] "The Idaho Constitution offers protection [against] unlawful search and seizure as well. Idaho Const. art. I, § 17. However, [Blythe] does not argue that Idaho's Constitution provides greater protection than the U.S. Constitution;

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. "The touchstone of the Fourth Amendment is reasonableness." *State v. Wulff*, 157 Idaho 416, 422, 337 P.3d 575, 581 (2014) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Jimeno*, 500 U.S. at 250 (citation omitted). Warrantless searches are presumptively unreasonable unless the search falls within one of the "specifically established and well-delineated exceptions." *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011).

One such exception to the warrant requirement is for searches conducted incident to an arrest. *State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017) (citations omitted). Under the search incident to arrest exception, law enforcement officers "may search an arrestee incident to a lawful custodial arrest." *Id.* Furthermore, "so long as the search and arrest are substantially contemporaneous, and the fruits of the search are not required to establish probable cause for the arrest, the search need not precisely follow the arrest in order to be incident to that arrest." *Id.*; *see also Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). There are two primary justifications for searches incident to arrest: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Lee*, 162 Idaho at 650, 402 P.3d at 1103 (quoting *Knowles v. Iowa*, 525 U.S. 113, 116 (1998)).

In *Chimel v. California*, the U.S. Supreme Court described the "proper extent" of a search conducted incident to a lawful, custodial arrest. 395 U.S. 752, 762 (1969). Specific to officer safety interests, "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Id.* at 762–63. As to the need for evidence preservation, "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 763. These same rationales apply to a search of the area "within [the arrestee's] immediate control"—meaning the area "from within which he might gain possession of a weapon or destructible evidence." *Id.*

thus, our analysis is limited to the Fourth Amendment to the U.S. Constitution." *State v. Lee*, 162 Idaho 642, 647, 402 P.3d 1095, 1100 n.1 (2017) (quoting *State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017)).

Where neither of the two underlying rationales for searches incident to arrest are present, the exception will not render a warrantless search reasonable. *See Knowles*, 525 U.S. at 116–18. In *Knowles v. Iowa*, a police officer stopped a man for speeding and issued him a citation. *Id.* at 114. Under Iowa law, the officer could have arrested the man, though he chose not to. *Id.* However, the officer proceeded to fully search the man's car and found a bag of marijuana and a "pot pipe" underneath the driver's seat. *Id.* The officer subsequently arrested the man and he was charged under the State's controlled substance laws. *Id.* The man argued the evidence should be suppressed because he was not arrested until after the contraband was found and, therefore, the search was not a lawful search incident to arrest. *Id.* The Iowa Supreme Court upheld the search, relying on an Iowa statute that allowed officers to search individuals as if they had been arrested, even where a citation was issued in lieu of an arrest, *i.e.* a "search incident to citation." *Id.* at 115–16.

The United States Supreme Court reversed, reasoning that neither rationale for conducting searches incident to an arrest was sufficiently present to justify a search where a citation was issued in lieu of an arrest. *Id.* at 117–19. As to the officer safety rationale, the Court explained that while concern for officer safety is "both legitimate and weighty," the threat to officer safety from issuing a traffic citation "is a good deal less than in the case of a custodial arrest." *Id.* at 117 (quoting *Maryland v. Wilson*, 519 U.S. 408, 412 (1997)). The Court further explained that officers are exposed to danger during a custodial arrest because of "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." *Id.* The underlying crime itself is not the source of danger to officer safety, rather, "the danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty[.]" *Id.* Thus, a "search incident to citation" could not be justified by concerns for officer safety. *Id.* at 118–19.

As to the evidence preservation rationale, the Court explained that "[o]nce [the driver] was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained." *Id.* at 118. No further evidence of speeding could be found on the driver's person or inside the car. *Id.* Therefore, the need to preserve evidence could not justify the officer's search of the car. *Id.* at 118–19. Because neither search-incident-to-arrest rationale was sufficiently present to justify the search, the Court held that the search was not lawful under the search incident to arrest exception. *Id.*

This Court recently discussed the twin rationales from *Knowles* in *State v. Lee*, 162 Idaho 642, 402 P.3d 1095 (2017). There, we concluded that neither rationale could be used to justify a search under the search incident to arrest exception where a totality of the circumstances demonstrated that an arrest was not going to occur. *Id.* at 652–53, 402 P.3d at 1105–06.

In that case, an officer observed a man (whom the officer knew had a suspended license) driving a pickup. *Id.* at 645, 402 P.3d at 1098. The man pulled into a Maverik parking lot and entered the store. *Id.* When he exited the store, the man began walking down the highway, leaving his pickup truck in the parking lot. *Id.* The officer caught up to the man and asked him for his driver's license. *Id.* at 645–46, 402 P.3d at 1098–99. The man said he did not have it on him. *Id.* at 646, 402 P.3d at 1099. The officer told the man he saw him driving with a suspended license and frisked him for weapons. *Id.* In the process, the officer removed several cylindrical containers and a pocketknife from the man's pocket. *Id.* The officer handcuffed the man and told him he was being "detained right now." *Id.* The officer told the man that he was "going to get a citation for driving without privileges" and told him to sit in the back of the patrol car. *Id.* After putting the man in the patrol car, the officer opened the cylindrical containers, discovered drugs, and arrested the man. *Id.*

The man filed a motion to suppress the drugs found in the containers. *Id.* The district court denied the motion, concluding the search was a permissible search incident to arrest. *Id.* Relying on the rationale from *Knowles*, we reversed, explaining that "[t]he reasonableness of a search is determined by the totality of the circumstances, and a search incident to arrest is not reasonable when an arrest is not going to occur." *Id.* at 6552, 402 P.3d at 1105 (citing *People v. Reid*, 26 N.E.3d 237 (N.Y. 2014); *State v. Taylor*, 808 P.2d 324 (Ariz. Ct. App. 1990); *People v. Macabeo*, 384 P.3d 1189 (Cal. 2016)). We went on to find *Lee* "almost indistinguishable" from *Knowles*, reasoning that any distinction between a search following an officer's statement that a citation was going to be issued and a search following the actual issuance of a citation was meaningless when considering the historical rationales for searches incident to arrest. *Id.* at 651, 402 P.3d at 1104. It made no difference that the arrest was substantially contemporaneous to the search because "once it was clear that an arrest was not going to take place, the historical rationales justifying the search were no longer present." *Id.*

This survey reveals that cases where the search precedes the arrest require careful scrutiny. In our view, "*Knowles* makes it clear that the search incident to arrest is not so absolute

that it extends to every traffic stop for which there is probable cause." *Id.* at 651, 402 P.3d at 1104. Certainly, where a custodial arrest has appropriately occurred, a subsequent search incident to that arrest will be lawful. However, where a search precedes the actual custodial arrest, we must determine on a case-by-case basis whether the twin rationales delineated in *Chimel* and *Knowles* were sufficiently present to justify a search.

Here, the district court found the officers had probable cause to arrest Blythe for "frequenting a place where drugs were found, for possession of a controlled substance, [and] for possession of paraphernalia." Although those grounds for arrest "may or may not have . . . resulted in convictions," the district court reasoned that probable cause to arrest on those grounds was enough to justify a search incident to arrest. The district court further reasoned that it was immaterial to determine the precise moment the words "you are under arrest" were uttered because the officers had probable cause to arrest Blythe on those other charges before he kicked off his shoes.

The district court's analysis places too much emphasis on probable cause. While probable cause is certainly a necessary prerequisite to a custodial arrest, it does not, by itself, justify a search. Therefore, the district court erred in concluding that probable cause to arrest Blythe was all that was necessary for the search-incident-to-arrest exception to apply. When a search precedes the arrest, and the State argues that the search-incident-to-arrest exception applies, courts must look to the rationales that justify a search incident to arrest to determine whether the exception should apply to the search.

We conclude that neither rationale is sufficiently present to justify the search in this case.

We first look to the officer-safety rationale. In the absence of a custodial arrest—or some clear indication that an arrest is imminent—there is no reason to believe deputies Boardman and Fanciullo were exposed to so much danger that a search of Blythe's shoes was warranted. Recall that the risk to officer safety arises from "the fact of the arrest, and its attendant proximity, stress, and uncertainty[.]" *Knowles*, 525 U.S. at 117. Here, there was no indication that Blythe was about to be arrested at the time the search took place. Thus, none of the stress and uncertainty attendant to arrests was present. Leading up to the moment Deputy Boardman searched Blythe's shoes, Parent appeared the more likely candidate for arrest. Parent had confessed to and taken ownership of the marijuana in the vehicle and Parent claimed the roll of tin foil. However, Parent was told he would receive a citation but would not be arrested. And even if Parent had been

8

arrested, and the car searched incident to that arrest, the arrest of Parent would have provided no justification for a search of Blythe's person. *See State v. Newsom*, 132 Idaho 698, 700, 979 P.2d 100, 102 (1998).

Looking solely to Blythe in the moments leading to the search, the officers did not handcuff Blythe or restrain him in any way. Deputy Boardman told Blythe that he was not under arrest. Granted, this statement was made before he found the "point" of heroin underneath the passenger seat of the car. However, the officers' conversation after they found the heroin demonstrates that they believed they needed more information before they could make an arrest. Deputy Boardman wanted to *Mirandize* Blythe and Parent to "ask them about it a little bit." After Deputy Fanciullo said he would separate the two for questioning, Deputy Boardman made a statement perhaps most indicative of his intent: "We'll go from there." This statement shows no immediate plan to arrest Blythe. To the contrary, Detective Boardman was deferring the decision until after they had more information.

And while Blythe subjectively believed he was going to be arrested and taken to jail, this does not alter our conclusion. Blythe's references to being taken to jail and asking if he could smoke a cigarette "in case" he was going to jail "for something" may reflect his guilty conscience, but they do not demonstrate Deputy Boardman's intent to arrest.

We are mindful of the threat to officer safety that arises from an extended traffic stop such as the one in this case. However, officers are not without legal methods of reducing the risk of danger to themselves that stop short of a full field-type search. For example, they may order the driver and any passengers out of the car. *Knowles*, 525 U.S. at 117–18 (citations omitted). They may also conduct a pat-down search of the driver or passengers under *Terry v. Ohio* if they have reasonable suspicion they are armed or dangerous. *Id.* (citing 392 U.S. 1 (1968)). However, absent a custodial arrest, or some indication that a custodial arrest is imminent, the officer safety rationale cannot support a more invasive search of an individual's person. Thus, the threat to officer safety was not sufficiently present to justify the search of Blythe's shoes under these circumstances.

Turning now to the need for evidence preservation, we examine the potential offenses for which there may have been a need to preserve evidence. The initial traffic violation for which Blythe and Parent were stopped was quickly abandoned upon Parent's admission to possessing marijuana. If Parent were ultimately cited for the traffic violation, clearly no further evidence of

9

that violation would be found in Blythe's shoes. As to the citation for possession of marijuana, Parent freely volunteered the marijuana's location in the vehicle. The officers searched the vehicle and found the marijuana where Parent said that it would be. Most importantly, Parent admitted the marijuana belonged to him. The possibility that additional evidence of Parent's possession of marijuana would be found in Blythe's shoes was remote to non-existent.

The offenses for which the district court concluded that Deputies Boardman and Fanciullo had probable cause to arrest Blythe were "frequenting a place where drugs were found, for possession of a controlled substance, [and] for possession of paraphernalia." However, to allow the evidence found in Blythe's shoe to justify the search itself would be to put the cart before the horse. *See State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017) ("[S]o long as the search and arrest are substantially contemporaneous, *and the fruits of the search are not required to establish probable cause for the arrest,* the search need not precisely follow the arrest in order to be incident to that arrest.") (emphasis added). Up until the point Deputy Boardman searched Blythe's shoes, the officers had expressed their intent to take definitive action only with regards to one offense—Parent's citation for possession of marijuana. Because there was no impending arrest for possession of a controlled substance or possession of paraphernalia, there was no need to preserve evidence of those offenses at the point Blythe's shoes were searched. Thus, the preservation of evidence rationale was not sufficiently present to justify a search of Blythe's shoes.

Because the search took place before an arrest occurred, and because neither rationale justifying a search incident to arrest was sufficiently present here, the search of Blythe's shoes was not a valid search incident to arrest. Therefore, the district court erred in holding that the search was reasonable under the Fourth Amendment.

## V.    CONCLUSION

For the above reasons, Blythe's conviction is vacated, the district court's order denying Blythe's motion to suppress is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Justices BRODY, BEVAN, STEGNER and MOELLER **CONCUR.**