**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47814**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 21, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JAMIS JEFFREY BUDKA, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jamis Jeffrey Budka appeals from his judgment of conviction for possession of methamphetamine, Idaho Code § 37-2732(c)(1). Budka challenges the district court's denial of his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court found the following facts in its written decision denying Budka's motion to suppress:

> At approximately 4:30 a.m. on December 30, 2018, Officer Andrew Morlock and Officer Chance Feldner of the Boise Police Department observed a Toyota Camry with a broken tail light driving in the area of 27th Street and Main Street in Boise. The officers, operating as one unit, initiated a traffic stop of the vehicle. The vehicle abruptly pulled over to the side of the road without signaling.

1

Officer Feldner initiated contact with the driver at the driver's side window and identified the driver by his driver's license as Defendant, Jamis Budka. Officer Morlock observed from the passenger side window. [Budka] was the sole occupant of the vehicle.

[Budka] was extremely nervous, demonstrated by visibly shaking and profuse sweating notwithstanding the fact that it was only approximately 35° Fahrenheit outside and the inside of the car did not appear to be warm. Because [Budka's] nervousness was well beyond what is typical for a traffic stop, Officer Feldner suspected based on his training and experience that [Budka] was under the influence of a stimulant. The officers immediately saw a homemade smoking device[2] sitting on the back seat of the car directly behind [Budka]. Based on their observations the officers had [Budka] step out of the vehicle.

As [Budka] stepped out of the vehicle, he consented to a pat-search of his person. [Budka] denied having any weapons, drugs or contraband on his person. Officer Feldner patted down [Budka's] outer clothing, including a flannel jacket and jeans and then asked to search his pockets. [Budka] declined. At that point, he was directed to sit on the front of the patrol car with Officer Morlock. When shown the smoking device from the back of his vehicle, [Budka] acknowledged it was used to smoke marijuana and belonged to his girlfriend.[3]

As Officer Feldner searched the vehicle, Officer Morlock chatted with [Budka], who continued to sweat profusely. [Budka] asked Officer Morlock whether he is "alright about the bong," to which Officer Morlock responded, "you're alright." [Budka] then proceeded to remove his jacket because he was so hot, placing it behind him on the hood of the patrol car. Based on his training and experience, Officer Morlock suspected [Budka] had additional contraband since his continued nervousness well exceeded what is typical for the type of encounter.

As he sat on the bumper of the patrol car, [Budka] positioned his legs such that his jeans were pressed tightly against his thighs. In [Budka's] pocket, Officer Morlock saw [a] long, narrow cylindrical object with a cross-shaped plunger at one end. Based on his training and experience, Officer Morlock was "100% certain" that the object was a syringe.

Officer Morlock then asked [Budka] whether he had a syringe in his front right pocket. [Budka] said no. After a few moments, Officer Morlock asked if [Budka] was sure it was not a syringe. [Budka] said he was sure. Knowing the object he saw was a syringe and knowing that people who use syringes for legal purposes typically do not deny having them, Officer Morlock was sure the syringe was illegal drug paraphernalia. Officer Morlock then stated, "I'm just going to feel that pocket, alright? Because it looks like a syringe to me." As Officer Morlock non-aggressively took ahold of [Budka's] right arm in anticipation of patting [Budka's] pocket, [Budka] immediately replied, "Yeah, it is."

---

[2]  It was a plastic water bottle with the housing of a pen protruding from a hole mid-way up the side of the bottle.

[3]  The only other paraphernalia located in the vehicle was an unused syringe.

2

Without yet having touched [Budka's] pocket, Officer Morlock had [Budka] turn around and placed him in handcuffs.[4] While doing so, Officer Morlock told [Budka] he was only detaining him, not arresting him. However, Officer Morlock in fact did intend to place [Budka] under arrest at that time. He told [Budka] he was only being detained because the drug investigation was on-going and he was trying to keep [Budka]--who was agitated--calm so he would continue to be cooperative. As Officer Morlock prepared to reach in [Budka's] pocket, [Budka] asked whether he was going to jail and Officer Morlock responded, "Not right now, man. Relax. You're not under arrest. Relax, bud."

Officer Morlock then donned a pair of gloves and pulled the syringe out of [Budka's] pocket. The syringe was used. Officer Morlock asked [Budka] whether the syringe was the reason he was "sweating so bad." [Budka] confirmed it was. Officer Morlock asked [Budka] what kind of drugs he used, to which [Budka] tearfully responded "heroin." Officer Morlock proceeded to search [Budka's] other pocket and pulled out a lighter and a plastic baggie that had been ripped in half. Officer Morlock asked where the rest of the baggie was and [Budka] stated that he "flushed it at work" after shooting up. Officer Morlock continued to search [Budka's] pockets whereupon [Budka] asked again if he was going to jail. Officer Morlock said, "Not yet, man. I just told you you're not under arrest right now. . . . We'll talk about that in a minute." Officer Morlock continued to search [Budka's] shoes and inside his pants before retrieving his jacket from the top of the patrol car. Inside the front pocket of the jacket, Officer Morlock located [a] plastic container which [sic] a green, leafy substance inside. [Budka] admitted it was marijuana. Officer Morlock also located a pouch containing two baggies. [Budka] admitted that the baggies contained heroin and methamphetamine.

After Officer Morlock located the drugs, [Budka] once again asked if he was going to jail to which Officer Morlock answered, "Yeah, after this dude. I mean, if all you had was the weed on you and a syringe, we could work with that. But, when you got H and meth on you, as well as the weed and the syringe. . . ." Officer Morlock then told [Budka] he was under arrest and read him his *Miranda* rights. [Budka] indicated he understood his rights . . . .

---

[4] Officer Morlock assured [Budka] he was not under arrest yet but that he was handcuffing him to make sure he did not get pricked with the syringe while pulling it out of [Budka's] pocket.

As a result of this encounter, the State charged Budka with two counts of felony possession of a controlled substance (heroin and methamphetamine), misdemeanor possession of a controlled substance (marijuana), and possession of drug paraphernalia. Budka filed a motion to suppress, arguing the warrantless search violated his Fourth Amendment rights. The State asserted the search was legal under the search-incident-to-arrest exception to the warrant requirement. The district court held a suppression hearing at which both Officers Morlock and Feldner testified and their body camera videos of the encounter were admitted in evidence.

Following the hearing, the district court issued a written decision denying Budka's suppression motion. The court ruled:

> [T]he totality of circumstances facing the officer prior to conducting the search of [Budka's] person supports a finding of probable cause to arrest [Budka] for possession of drug paraphernalia and, further, indicates that the arrest was going to occur prior to the search occurring. Thus, the search of his person was justified under the search incident to arrest exception to the warrant requirement.

Thereafter, Budka entered into a conditional plea, agreeing to plead guilty to one count of possession of methamphetamine but reserving his right to appeal the denial of his suppression motion. In exchange, the State agreed to dismiss the remaining charges. Budka timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Budka challenges the district court's ruling that Officer Morlock's search of his person was a lawful search incident to arrest. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A search incident to a valid arrest is among those exceptions and does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Under this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. The permissible scope and purposes

4

of a search incident to an arrest is not limited to the removal of weapons but includes the discovery and seizures of evidence of crime and articles of value which, if left in the arrestee's possession, might be used to facilitate his escape. *Moore*, 129 Idaho at 781, 932 P.2d at 904.

So long as the search and arrest are substantially contemporaneous, and the fruits of the search are not required to establish probable cause for the arrest, the search need not precisely follow the arrest in order to be incident to that arrest. *State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017). The Idaho Supreme Court has cautioned, however, that a search preceding an arrest requires "careful scrutiny." *State v. Blythe*, 166 Idaho 713, 718, 462 P.3d 1177, 1182 (2020). To determine whether a search preceding an arrest qualifies as a search incident to an arrest, the Court analyzes the totality of the circumstances:

> The reasonableness of a search is determined by the totality of the circumstances, and a search incident to arrest is not reasonable when an arrest is not going to occur. We determine if an arrest is going to occur based on the totality of circumstances, including the officer's statements. While the subjective intent of an officer is usually not relevant in Fourth Amendment analysis, statements made by the officer of his intentions along with other objective facts are relevant in the totality of circumstances as to whether an arrest is to occur. If an arrest does not occur, and objectively the totality of the circumstances show an arrest is not going to occur, an officer cannot justify a warrantless search based on the search incident to arrest exception.

*Lee*, 162 Idaho at 652, 402 P.3d at 1105.

The threshold inquiry for determining whether a search is incident to a valid arrest is whether the officer has probable cause for the search. *Id*. at 649, 402 P.3d at 1102. A warrantless arrest is reasonable and does not violate the Fourth Amendment only if the officer has probable cause to believe that a criminal offense has been or is being committed. *Id.* (quotation omitted); *see also State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996) ("[P]robable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty.").

Next, where a search precedes the actual custodial arrest, the Court must determine on a case-by-case basis whether the twin rationales for a search incident to an arrest were sufficiently present to justify the search. *Blythe*, 166 Idaho at 718, 462 P.3d at 1182. These rationales include evidence preservation and officer safety. *Id.* at 717, 462 P.3d at 1181. To protect officer safety, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Id*.

5

(quoting *Chimel*, 395 U.S. at 762). To preserve evidence, "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* (quoting *Chimel*, 395 U.S. at 762). "Where neither of the two underlying rationales for searches incident to arrest are present, the exception will not render a warrantless search reasonable." *Id.*

Budka asserts this case is analogous to *Lee*. In that case, an officer observed Lee driving, suspected he was driving without a valid license based on a prior encounter, and confirmed through dispatch that Lee's license was indeed suspended. *Lee*, 162 Idaho at 645, 402 P.3d at 1098. Lee then parked his vehicle, entered a store, exited the store, and began walking on the highway instead of returning to his vehicle. *Id.* The officer stopped Lee who said he did not have his license with him, repeatedly touched his pockets, and had to be told repeatedly to go to the patrol car. *Id.* at 646, 402 P.3d at 1099. During a pat-down frisk of Lee for weapons, the officer felt a large bulge in Lee's front pocket and, despite his refusal to give consent, the officer removed several items from Lee's pockets, including two containers. *Id.* The officer then advised Lee that "he was being 'detained right now'" and that "he was 'going to get a citation for driving without privileges.'" *Id.* Then, the officer opened the containers finding "a green leafy substance" in one and "a powdery residue" in the other. *Id.* As a result, the State charged Lee with possession of a controlled substance, possession of paraphernalia, and driving without privileges. *Id.*

Lee moved to suppress the evidence from the search, and the district court denied this motion, ruling that the officer had probable cause to arrest Lee for driving without privileges and "the search was substantially contemporaneous with the arrest." *Id.* On appeal, the Idaho Supreme Court reversed the district court. The Court noted that although the officer had probable cause to arrest Lee for driving without privileges, he told Lee that he was going to issue him a citation for that offense. *Id.* The Court ruled that "although the arrest was substantially contemporaneous to the search, once it was clear an arrest was not going to take place, the historical rationales [of officer safety and of evidence preservation] justifying the search were no longer present." *Id.* at 651, 402 P.3d at 1104.

Contrary to Budka's assertion, *Lee* is distinguishable from this case in important respects. First, unlike the officer in *Lee*, the officers in this case had more than probable cause of a traffic violation; they had probable cause to arrest Budka for possession of paraphernalia--including the

6

homemade bong in his vehicle and the syringe in his pocket. Officer Morlock testified that upon seeing the outline of a syringe in Budka's pocket, he was certain it was a syringe: "[Question]: How certain are you when you were looking at the imprint at that time that it was a syringe you were looking at? [Answer]: A hundred percent." Meanwhile, Budka repeatedly lied about having a syringe in his pocket. Officer Morlock's observation of the syringe's outline, his 100 percent certainty the outline was a syringe, Budka's lie about the syringe, and his profuse sweating--which is clearly evident on Officer Morlock's video--gave Officer Morlock probable cause to conclude Budka possessed more contraband, namely the syringe.

Second, in contrast to the unequivocal statement in *Lee* that the officer only intended to give Lee a citation, Officer Morlock's statements about whether he was going to arrest Budka were equivocal and suggested Officer Morlock intended to eventually arrest Budka. For example, during the search for the used syringe in Budka's front pocket, Budka repeatedly asked whether he was going to jail, and Officer Morlock equivocally responded: "*Not right now, man. Relax. You're not under arrest. Relax, bud.*" "Not yet, man. I just told you you're not under arrest *right now. . . . We'll talk about that in a minute.*" (Emphasis added.)

Third, Officer Morlock testified during the suppression hearing that he intended to arrest Budka when he was 100 percent certain he saw the syringe in Budka's pocket and Budka lied about it:

Q.  He [is] still not under arrest at this point?
A.  He was going to be placed under arrest. I had not formally told him he was under arrest.
. . . .
Q.  You're saying he was under arrest prior to you pulling out the syringe?
A.  He was going to be under arrest for that syringe, yes.

On appeal, Budka raises two arguments challenging the district court's reliance on this testimony about Officer Morlock's intent to arrest Budka. Budka argues the court "improperly considered and based its decision on the officer's undisclosed ulterior motives and undisclosed intentions, which are irrelevant to the determination approved by the Supreme Court in *Lee*." Budka's argument appears to be that the trial court is limited to considering the officer's statements made during the incident in question and may not rely on an officer's subsequent sworn testimony at a suppression hearing about his intent. To the contrary, however, *Lee* provides that "while the subjective intent of an officer is usually not relevant in Fourth Amendment analysis, *statements made by the officer of his intentions* along with other objective

7

facts are relevant in the totality of circumstances as to whether an arrest is to occur." *Id.* at 652, 402 P.3d at 1105 (emphasis added). Contrary to Budka's suggestion, *Lee* does not limit the trial court's consideration of the officer's statements to those statements made at the time of the incident and does not otherwise indicate the court may not rely on an officer's subsequent testimony during a suppression hearing. *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019) (ruling State has burden to demonstrate warrantless search fell within well-recognized exception to warrant requirement or was otherwise reasonable under circumstances).

Budka also argues "the district court clearly erred by finding that 'Officer Morlock fully intended to arrest' [Budka] after [he] 'lied about having the syringe in his pocket.'" He contends that this finding "conflicts with Officer Morlock's testimony and is not supported by the record." In support, Budka relies on the following testimony by Officer Morlock:

> Q.   [H]e said, yes, it's a syringe when you were grabbing onto his arm, what did you do at that point?
> A.   I asked him just to turn around, face my vehicle and placed handcuffs on him.
> Q.   Why did you do that?
> A.   Because initially I had probable cause to get the syringe out of his pocket, and due to my training and experience and the obvious lies leading up to that, he didn't state he was a diabetic or anything to that effect, I believe there was further items to be located, so he was *eventually* going to be placed under arrest, *potentially*, but I didn't tell him that.

(Emphasis added.) Whether this testimony is conflicting, as Budka contends, with Officer Morlock's subsequent definitive testimony (quoted above) that he was going to arrest Budka for the syringe is a credibility determination. The district court expressly found Officer Morlock to be "credible" and relied on his testimony that he intended to arrest Budka once he saw the outline of the syringe in Budka's pocket and Budka lied about it. This Court will not substitute its view for the trial court's as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998).

Finally, this case is also distinguishable from *Lee* because both the rationales justifying a search incident to arrest--officer safety and evidence preservation--existed in this case. As Officer Morlock testified, he had safety concerns about definitively telling Budka he was under arrest while at the same time attempting to retrieve the syringe from his pocket:

> So in that case, I don't want to say, yes, you're under arrest for this, and then I find another few items. But then the safety part comes into play if there's a knife,

a sheath knife, or uncapped syringe, I don't want to get stuck or stabbed, so I don't want him moving around a lot, so I'm not going to tell him he's under arrest and have him potentially freak out on me.

Further, the potential preservation of evidence justified Officer Morlock's continued search of Budka. Unlike *Lee* where the officer only had probable cause of a traffic violation, Officer Morlock had probable cause that Budka was in possession of paraphernalia, which justified a further search for additional paraphernalia or other related contraband to preserve the evidence.

## IV.

## CONCLUSION

Based on the totality of circumstances, Budka's arrest was going to occur once Officer Morlock saw what he knew with 100 percent certainty was a syringe in Budka's pocket and Budka lied about it. Accordingly, Officer Morlock's search was incident to a valid arrest, and the district court did not err by denying Budka's suppression motion. We affirm the denial of Budka's motion to suppress and the judgment of conviction for possession of methamphetamine.

Judge GRATTON and Judge LORELLO **CONCUR**.