# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44932

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, August 2017 Term** |
| | ) | |
| **v.** | ) | **2017 Opinion No. 103** |
| | ) | |
| **TREVOR GLENN LEE,** | ) | **Filed: September 22, 2017** |
| | ) | |
| **Defendant-Appellant.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan E. Wiebe, District Judge.

District court order denying motion to suppress, <u>reversed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds, Depute State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Jessica M. Lorello, Deputy Attorney General argued.

_____

BURDICK, Chief Justice.

Trevor Glenn Lee appeals the Payette County district court's denial of his motion to suppress. As part of his plea agreement, Lee reserved the right to challenge the denial of his suppression motion on appeal. The district court concluded the pat-down frisk was reasonable under *Terry v. Ohio*, 392 U.S. 1 (1968), but the officer exceeded the scope of the frisk by opening the containers found in Lee's pocket. However, the district court concluded the search of the containers was permissible as a search incident to Lee's arrest because, prior to the search, the officer had probable cause to arrest Lee for driving without privileges and the search was substantially contemporaneous with the arrest. The court of appeals agreed and affirmed the district court's denial of Lee's motion to suppress. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2015, Officer Laurenson of the Fruitland Police Department observed Trevor Lee driving a pickup. Officer Laurenson suspected that Lee might be driving without a valid

1

license due to a prior encounter and confirmed through dispatch that Lee's license was indeed suspended. Officer Laurenson then observed Lee park in a Maverik parking lot and enter the store. He later observed Lee exit the store and start to walk on the highway instead of getting back into his pickup. Officer Laurenson pulled in behind Lee, activated his patrol lights, and made contact with Lee.

During the initial contact, Officer Laurenson asked Lee why he left his truck back at the Maverik store. Lee responded that he wanted to walk. Officer Laurenson then asked Lee for his driver's license. Lee said that he did not have his license on him while patting his pockets. Officer Laurenson told Lee not to touch his pockets and asked if he had any weapons. Once again, Lee began patting his pockets, mumbling some words. Officer Laurenson immediately told Lee not to touch his pockets and to go to the front of his patrol car. Lee did not move, asking "What did I do?" Officer Laurenson, once again, told Lee that he saw him driving with a suspended license. Officer Laurenson told Lee another three times to go to the patrol car, but Lee did not comply, arguing that he "was not driving." Finally, on the fifth request, Lee began to walk towards the patrol car. Once Lee made it to the patrol car, Officer Laurenson began a pat-down frisk for weapons. During the frisk, Officer Laurenson felt a large bulge in Lee's front pocket. Officer Laurenson felt that the bulge consisted of several cylindrical items, but one item felt longer, like a pocketknife. Officer Laurenson asked Lee for his consent to search his pocket; Lee denied his request, but Officer Laurenson, not knowing whether the item he felt was indeed a knife, told Lee that he was going to anyway. Officer Laurenson pulled each item out one at a time until he reached and pulled out the last object, a pocketknife. Officer Laurenson handcuffed Lee and told him that he was being "detained right now." Officer Laurenson advised Lee that he was "going to get a citation for driving without privileges" and in the meantime, that he was "going to sit in the back of [the] car."

Once Lee was detained, Officer Laurenson examined the containers because, based on his experience and training, he believed the containers contained evidence of drug activity. Officer Laurenson opened the container that he found to be the "most worn" and discovered a green leafy substance. He then opened the other container and discovered a powdery residue. Officer Laurenson arrested Lee and charged him with Possession of a Controlled Substance, Possession of Paraphernalia, and Driving without Privileges.

Lee moved to suppress the evidence found during the search. The district court denied Lee's motion to suppress. The court concluded Officer Laurenson was justified in conducting a frisk under *Terry*. However, the court concluded that Officer Laurenson exceeded the scope of a *Terry* frisk when he opened the containers because he did not believe the containers contained weapons. Nonetheless, the court held that the search of the containers was permissible as a search incident to Lee's arrest because Officer Laurenson had probable cause to arrest Lee based on the driving offense, and the search was substantially contemporaneous with the arrest.

The parties entered into a plea agreement, pursuant to which Lee pled guilty to felony possession of a controlled substance and the State dismissed the misdemeanor charges. The court imposed a unified sentence of four years, with eighteen months determinate. The court then suspended the sentence and placed Lee on probation for three years. The court of appeals affirmed the district court's denial of the motion to suppress and judgment of conviction. Lee timely petitioned for review to this Court.

## II.   ISSUES ON APPEAL

1. Regarding the *Terry* frisk, was the district court correct in holding that the frisk was reasonable, but that the officer exceeded the permissible scope under *Terry*?

2. Under the search incident to arrest exception, was the district court correct in holding that the search of the containers was permissible because the officer had probable cause to arrest Lee for driving without privileges prior to the search regardless of whether the officer intended to arrest Lee before finding the drug paraphernalia?

3

## III. STANDARD OF REVIEW

When addressing a petition for review, this Court will give "serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014). In reviewing an order denying a motion to suppress evidence, this Court applies a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court will accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found. *Id.* Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).

## IV. ANALYSIS

Lee's constitutional challenges arise exclusively under the United States Constitution, as Lee makes no argument under the Idaho Constitution.[1] Lee contends the district court erred in denying his motion to suppress for two main reasons. First, Officer Laurenson's frisk of Lee was not a permissible frisk under *Terry*. Second, Officer Laurenson's search of Lee's containers was not permitted under the search incident to arrest exception. For the reasons discussed below, we reverse the district court's denial of Lee's motion to suppress.

**A.** **The district court correctly concluded that the frisk was justified under *Terry* but that Officer Laurenson exceeded the scope of a permissible frisk when he opened the containers found on Lee.**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which requires unlawfully seized evidence to be excluded.[2] *E.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *State v. Page*, 140 Idaho 841, 846, 103

---

[1] "The Idaho Constitution offers protection for unlawful search and seizure as well. Idaho Const. art. I, § 17. However, [Lee] does not argue that Idaho's Constitution provides greater protection than the U.S. Constitution; thus, our analysis is limited to the Fourth Amendment to the U.S. Constitution." *State v. Cohagen*, No. 44800, slip op. at 4 (Idaho July 18, 2017) (citing *In re Doe*, 155 Idaho 36, 39 n.2, 304 P.3d 1202, 1205 n.2 (2013)).

[2] Deterrence of police misconduct is not the only purpose of the exclusionary rule under Idaho's Constitution, rather the exclusionary rule serves to: "1) provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure; 2) deter the police from acting unlawfully in obtaining evidence; 3) encourage thoroughness in the warrant issuing process; 4) avoid having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means; and 5) preserve judicial integrity." *Cohagen*, No. 44800, slip op. at 7 (citing *State v. Guzman*, 122 Idaho 981, 993, 842 P.2d 660, 672 (1992)). However, Lee makes no argument concerning the Idaho Constitution.

4

P.3d 454, 459 (2004). The exclusionary rule requires the suppression of both "primary evidence obtained as a direct result of an illegal search or seizure, . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *Segura v. United States*, 468 U.S. 796, 804 (1984) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)); *accord, e.g.*, *Bishop*, 146 Idaho at 811–12, 203 P.3d at 1210–11. "Searches conducted without a warrant are considered *per se* unreasonable unless they fall into one of the 'specifically established and well-delineated exceptions' to this general rule." *Bishop*, 146 Idaho at 815, 203 P.3d at 1214; (quoting *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988)).

One such exception is the *Terry* frisk, which permits a pat-down search for weapons acknowledged by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, an officer may conduct a limited pat-down search, or frisk, "of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons." *Bishop*, 146 Idaho at 818, 203 P.3d at 1217 (quoting *Terry*, 392 U.S. at 16, 30). "Such a frisk is only justified when, at the moment of the frisk, the officer has reason to believe that the individual he or she is investigating is 'armed and presently dangerous to the officer or to others' and nothing in the initial stages of the encounter dispels the officer's belief." *Id.* (quoting *Terry*, 392 U.S. at 24, 30). "The test is an objective one that asks whether, under the totality of the circumstances, a reasonably prudent person would be justified in concluding that the individual posed a risk of danger." *Id.* (citing *State v. Henage*, 143 Idaho 655, 660–61, 152 P.3d 16, 21–22 (2007)); *see also Terry*, 392 U.S. at 27. The officer must indicate "specific and articulable facts which, taken together with rational inferences from those facts," and in light of the officer's experiences, justify the officer's suspicion that the individual is armed and presently dangerous. *Henage*, 143 Idaho at 660, 152 P.3d at 21 (quoting *Terry*, 392 U.S. at 21).

This Court has identified several factors that influence whether a reasonable person in the officer's position would conclude that a particular individual was armed and dangerous, including:

> [W]hether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Bishop*, 146 Idaho at 819, 203 P.3d at 1218.

The district court concluded that the frisk was reasonable based on Lee's reluctant attitude and noncompliance with Officer Laurenson's requests, as well as Lee's previous encounter with Officer Laurenson, where Lee ran when told he would be searched for drugs.[3] Here, although Lee was not violent with Officer Laurenson, he was uncooperative. Lee did not initially comply with Officer Laurenson's several requests to go to the front of the patrol car. Further, although Officer Laurenson may not have noticed the bulge until after he conducted the frisk, when he asked Lee whether he had any weapons, Lee moved his hand towards his pocket before stating whether he did or did not. Therefore, although an officer's "inchoate and unparticularized suspicion or 'hunch,' " for safety is not enough to justify a frisk, *id.*, (quoting *Terry*, 392 U.S. at 27), the specific and articulable facts in this case, taken together with rational inferences from those facts, and in light of Officer Laurenson's experiences, justified Officer Laurenson's suspicion that Lee was armed and dangerous.

However, Officer Laurenson exceeded the permissible scope of the *Terry* frisk when he opened the containers, believing they contained drugs, not weapons.

> [T]he permissible scope of a pat-down search for weapons is limited to the minimum intrusion necessary to reasonably assure the officer that the suspect does not have a weapon. If the officer is unable to make an objectively reasonable determination that an object causing a bulge under a person's clothing is not a weapon by feeling its size and density, the officer is entitled to further invade the person's privacy only to the extent necessary that such a determination can be made.

*State v. Watson*, 143 Idaho 840, 845, 153 P.3d 1186, 1191 (Ct. App. 2007).

Once an officer is satisfied that an object found on the individual's person does not contain a weapon, the officer no longer has a valid reason to further invade the object. In *State v. Faith*, the officers performed a *Terry* frisk on the defendant, found an Altoids tin on his person, and then opened the tin to find drug residue and paraphernalia. 141 Idaho 728, 729, 117 P.3d 142, 143 (Ct. App. 2005). The Court of Appeals concluded that the removal of the tin violated the defendant's Fourth Amendment rights because "[a]fter satisfying themselves that the item was a container and not a weapon . . . the officers had no valid reason to further invade [the

---

[3] Lee supports his argument, that Officer Laurenson's frisk was unreasonable, by arguing that the district court clearly erred in two of its factual findings that are relevant to this analysis: First, the district court found that Lee did not verbally respond when Officer Laurenson asked if he was carrying any weapons; and second, the district court found that Officer Laurenson observed a bulge in Lee's front pocket before he began the frisk. However, according to Lee, Lee *did* respond to Officer Laurenson's question, and Officer Laurenson did not observe the bulge in Lee's pocket until *after* he began the frisk. Our conclusion that the frisk exceeded the scope of *Terry* obviates the need to address Lee's assertions that the district court erred in its factual finding.

6

defendant's] right to be free of police intrusion absent reasonable cause to arrest him." *Id.* at 730, 117 P.3d at 144. The court further explained that "even if the officers were justified in removing the tin for their own protection . . . once the container was in the officers' possession, the officers no longer had reason to believe that it posed a threat to them in either respect." *Id.*

Similarly, in this case, Officer Laurenson exceeded the permissible scope of the *Terry* frisk when he opened the containers, because he did not believe the containers posed a threat. Officer Laurenson testified that based on his drug training, he immediately recognized that the items might contain contraband. Although Officer Laurenson was permitted to conduct a pat-down frisk of Lee's outer clothing for weapons, once Officer Laurenson opened the containers, he exceeded the scope of the permissible *Terry* frisk. Thus, the warrantless opening of the containers violated Lee's right against unreasonable searches, unless an exception to the warrant requirement applies. The district court found that the search incident to arrest exception justified the search.

**B.      The district court erred in concluding that the search of Lee's person was a permissible search incident to arrest.**

The second well-recognized exception to the warrant requirement applicable in this case is the search incident to arrest. Pursuant to the search incident to arrest exception, law enforcement officers may search an arrestee incident to a lawful custodial arrest. *Virginia v. Moore*, 553 U.S. 164, 176–77 (2008); *United States v. Robinson*, 414 U.S. 218, 235–36 (1973); *see also State v. Baxter*, 144 Idaho 672, 680, 168 P.3d 1019, 1027 (Ct. App. 2007). Further, "so long as the search and arrest are substantially contemporaneous, and the fruits of the search are not required to establish probable cause for the arrest, the search need not precisely follow the arrest in order to be incident to that arrest." *State v. Johnson*, 137 Idaho 656, 662, 51 P.3d 1112, 1118 (Ct. App. 2002) (quoting *State v. Crabb*, 107 Idaho 298, 304, 688 P.2d 1203, 1209 (Ct. App. 1984)).

Lee contends that the search of the containers found in Lee's pocket was not permitted as a search incident to arrest for two reasons. First, the probable cause for the arrest was provided by the fruits of the search because Officer Laurenson did not arrest Lee for driving without privileges either prior to or after the search and Lee was not, and could not, have been arrested for possession of a controlled substance prior to the search of the containers found in his pockets. Second, the search of the containers did not implicate either of the historical rationales underlying the search incident to arrest exception—officer safety and evidence preservation—

because (1) Officer Laurenson stated that he would issue Lee a citation for the driving offense; and (2) due to the *de minimis* nature of the offense, Officer Laurenson knew no further evidence of driving without privileges would be found on Lee's person or in the containers.

The State, on the other hand, contends that for a search to fall within the search incident to arrest exception all that is required is that probable cause for *any* arrestable offense exists prior to the search and that the search be substantially contemporaneous to the arrest—regardless of the offense for which one is arrested, and even if the officer is neither making nor contemplating an actual arrest.

The threshold question involves probable cause. An officer may perform a warrantless search only incident to an arrest that is lawful. "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable [and lawful] under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

In this case, Officer Laurenson initially had probable cause to arrest Lee for driving without privileges before he searched the containers, because he saw Lee drive and confirmed Lee was without driving privileges. Thus, the marijuana and methamphetamine discovered during the search were not used to establish probable cause to arrest Lee.

However, the question still remains: When Officer Laurenson established that he was not going to arrest Lee, and rather was only going to issue a citation, could the officer still search Lee's person "incident to arrest" because he *could have* arrested him for driving without privileges, but chose not to?

The United States Supreme Court has repeatedly reaffirmed that warrantless searches incident to a lawful arrest are justified by two historical rationales: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (citing *Robinson*, 414 U.S. at 234).

The United States Supreme Court laid down the "proper extent" of a search incident to a lawful, custodial arrest in *Chimel v. California*, 395 U.S. 752, 762 (1969). The Court stated that, due to officer safety interests, "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Id.* at 762–63. The Court similarly recognized that "it is entirely reasonable for the arresting officer to search for and seize any evidence on the

8

arrestee's person in order to prevent its concealment or destruction." *Id.* at 763. The Court clarified that the area of such search includes the area " 'within [the arrestee's] immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

Though *Chimel* failed to address the issue of whether the bare fact of probable cause and an arrest justified the search, the Court later answered this question by announcing that all officers are entitled to search incident to a "full custodial arrest" regardless of the likelihood that the search will reveal a dangerous weapon or evidence material to the prosecution of the offense. *Robinson*, 414 U.S. at 236; *Gustafson v. Florida*, 414 U.S. 260, 265 (1973).

More recently, in *Knowles*, the United States Supreme Court clarified that a warrantless search of a vehicle pursuant to a citation, rather than an arrest, violated the Fourth Amendment. 525 U.S. at 119. In *Knowles*, defendant Knowles was stopped for speeding. *Id.* at 114. Under Iowa law, if an officer observes an individual committing a traffic violation, the officer is authorized to either arrest the individual or issue a citation. *Id.* at 115. The officer chose to issue Knowles a citation—and did in fact issue him a citation—in lieu of an arrest. *Id.* at 114. The officer then conducted a full search of Knowles' car with neither consent nor probable cause for a different offense. *Id.* at 114–15. The officer found drugs and then arrested Knowles. *Id.* In upholding the search, the Iowa Supreme Court relied upon an Iowa statute specifying that "the issuance of a citation in lieu of an arrest 'does not affect the officer's authority to conduct an otherwise lawful search,' "[4] interpreting this statute to allow a search incident to citation. *Id.* at 115.

The Court reversed, reasoning that the two primary historical justifications for incident searches set out in *Chimel*—disarming an arrestee and preserving evidence—did not justify the search of Knowles once the citation was issued. *Id.* at 118.

> We have recognized that the first rationale—officer safety—is " 'both legitimate and weighty,' " *Maryland v. Wilson*, 519 U.S. 408, 412, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) *(per curiam)* ). The threat to officer safety from issuing a traffic citation, however, is a good deal less than in the case of a custodial arrest. In *Robinson*, we stated that a custodial arrest involves "danger to an officer" because of "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." 414 U.S. at 234–235, 94 S.Ct. 467. We recognized that "[t]he danger to the police officer flows

---

[4] Iowa Code Ann. § 805.1(4).

> from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest." *Id.*, at 234, n. 5, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. A routine traffic stop, on the other hand, is a relatively brief encounter and "is more analogous to a so-called '*Terry* stop' . . . than to a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

*Id.* at 117. Similarly, with respect to evidence preservation, *Knowles* reasoned that "[o]nce Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. *Id.* at 118. No further evidence of excessive speed was going to be found on the person of the offender or in the passenger compartment of the car." *Id.*

Here, the State seeks to distinguish *Knowles* from this case because the search in *Knowles* took place *after* the officer had issued a citation. However, *Knowles* makes it clear that the search incident to arrest is not so absolute that it extends to every traffic stop for which there is probable cause. While it is true that no citation was issued in this case, the facts of the *Knowles* case and of this case are almost indistinguishable. Here, like *Knowles*, Lee was temporarily stopped for a traffic offense—driving without privileges in this case and speeding in *Knowles*. Like *Knowles*, the officer determined that Lee would not be arrested, but would instead be issued a citation. Like *Knowles*, the stop of Lee offered no additional probable cause to give the detaining officer reason to search Lee. The only difference between *Knowles* and this case is that Knowles was issued a citation before the search. However, the distinction that Knowles was issued a citation before the search, but Lee was not, is meaningless when considering the historical rationales underlying the search incident to arrest exception because Officer Laurenson already said that he would issue Lee a citation for the traffic offense.

Therefore, Lee correctly contends that the distinction between actually issuing a citation and stating that a citation will be issued is a distinction without a difference because the historical rationales explained in *Chimel* are not present in both situations—when a citation is actually issued and when an officer states that he is going to issue a citation. Regarding evidence preservation, all the evidence that was needed to issue Lee a citation for driving without privileges had already been obtained before the search. Thus, no further evidence of driving without privileges would be found in Lee's containers. Regarding officer safety, Officer Laurenson had already frisked Lee for weapons, and Officer Laurenson knew no other weapons would be found in the containers because, based on his experience and training, he immediately recognized that the containers might contain contraband.

10

In sum, Officer Laurenson had probable cause to arrest Lee for driving without privileges prior to the search. However, Officer Laurenson told Lee that he would issue him a citation for that offense instead. Yet, instead of actually writing the citation, Officer Laurenson searched the containers found on Lee's person, finding drug paraphernalia. Officer Laurenson then decided to arrest Lee instead of issuing him the citation. Lee was arrested and charged with driving without privileges as well as several drug possession charges. Although the arrest was substantially contemporaneous to the search, once it was clear that an arrest was not going to take place, the historical rationales justifying the search were no longer present.

Decisions from other jurisdictions support the rationale that the search incident to arrest exception should not apply when no arrest is to take place. "A search incident to arrest need not necessarily occur after formal arrest to be valid, but the argument that the search was incident to arrest becomes more strained when the facts show that a defendant would not have been arrested but for the fact that the search produced evidence of a crime . . . ." *United States v. Davis*, 111 F. Supp. 3d 323, 334 (E.D.N.Y. 2015).

In *People v. Reid*, an officer pulled over a vehicle for driving erratically, and subsequently developed probable cause to arrest the driver for driving while intoxicated. 26 N.E.3d 237, 238 (N.Y. 2014). The officer subsequently performed a pat-down of the driver, found a switch-blade knife, and then arrested the driver. *Id.* At the driver's suppression hearing, the officer testified that he was not going to arrest the driver for driving while intoxicated; rather he only made the decision to arrest after finding the knife in the pat-down search. *Id.* The court found that the search could not be justified as incident to arrest stating, "[i]t is irrelevant that, because probable cause existed, there *could* have been an arrest without a search. A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not." *Id.* at 239. The court went on to say that "If a search could be justified by an arrest that, but for the search, would never have taken place, the Supreme Court would not have decided *Knowles* in the way it did." *Id.* at 240.

Similarly, in *State v. Taylor*, officers approached a man drinking in a park, intending to issue a citation for that offense. 808 P.2d 324, 324 (Ariz. Ct. App. 1990). One officer searched the defendant and found hashish, and subsequently arrested the defendant. *Id.* Both officers agreed that if the hashish had not been found during the search, the defendant would have been free to leave. *Id.* On appeal, the court addressed "whether officers are free to search anyone they

might arrest but have no intention of arresting under a search incident to arrest theory." *Id.* The court held "they may not." *Id.* The court went on to say,

> [i]t would be obviously destructive of the privacy of many if police could justify searches on the basis of charges they never intended to pursue in the hope that the search would turn up something they could pursue. That would invite pretextual arrests and incident searches, with a custodial arrest to follow if something was found and release to follow otherwise.

*Id.* at 325.

Recently, the California Supreme Court held in *People v. Macabeo*, that ". . . *Rawlings* does not stand for the broad proposition that probable cause to arrest will always justify a search incident as long as an arrest follows. Otherwise, *Knowles* would have been decided differently." 384 P.3d 1189, 1197 (Cal. 2016). The court explained that the "[p]eople's expansive understanding of *Rawlings* . . . is inconsistent with *Chimel*" and "in tension with the reasoning in *Knowles*[—officer safety and evidence preservation]." *Id.* at 1195–96. The court concluded, "Once it [is] clear that an arrest [is] *not* going to take place, the justification for a search incident to arrest is no longer operative." *Id.* at 1197.

We agree with the rationale adopted by the courts in *Reid*, *Taylor*, and *Macabeo*. The reasonableness of a search is determined by the totality of the circumstances, and a search incident to arrest is not reasonable when an arrest is not going to occur. We determine if an arrest is going to occur based on the totality of the circumstances, including the officer's statements. While the subjective intent of an officer is usually not relevant in Fourth Amendment analysis, statements made by the officer of his intentions along with other objective facts are relevant in the totality of circumstances as to whether an arrest is to occur. If an arrest does not occur, and objectively the totality of the circumstances show an arrest is not going to occur, an officer cannot justify a warrantless search based on the search incident to arrest exception.

Here, Officer Laurenson told Lee he would get a citation for driving without privileges. It was only after Officer Laurenson searched Lee and subsequently the containers that Officer Laurenson decided to arrest Lee. Because the totality of the circumstances, including Officer Laurenson's statement that Lee was to get a citation, show that no arrest was to occur prior to finding marijuana and methamphetamine during the search, the search that occurred was a search incident only to an intended citation. Therefore, the search incident to arrest exception to the warrant requirement cannot justify the search. Thus, the search was unlawful, and therefore the

fruits of the search must be suppressed. Accordingly, the district court's denial of Lee's motion to suppress must be reversed.

## V. CONCLUSION

We vacate the conviction, reverse the district court's denial of Lee's motion to suppress, and remand for further proceedings consistent with this opinion.

Justices EISMANN, JONES, HORTON and BRODY, **CONCUR.**