Filed 12/22/20  In re Joseph P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JOSEPH P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH P.,<br><br>     Defendant and Appellant. | A159187<br><br>(Solano County<br>Super. Ct. No. J44732) |

Minor Joseph P. was observed by a police officer to be in possession of a marijuana joint, an infraction under Health and Safety Code section 11357. The officer told Joseph he was going to issue a citation and then searched Joseph's backpack, discovering additional marijuana, alcohol, and one pill of a controlled substance.  He arrested Joseph based on the contents of the backpack, and subsequently recovered a knife from Joseph's sock.  The juvenile court denied Joseph's motion to suppress the items recovered by the officer.  Following a contested jurisdictional hearing, the court found true allegations that Joseph possessed a dirk or dagger, a controlled substance, an alcoholic beverage, and 28.5 grams of marijuana or less, and he was placed on

1

probation. He appeals, contending his suppression motion was wrongly denied because the warrantless search was not justified as a search incident to arrest where the officer intended only to cite him. We agree, and we reverse the true findings on all counts and the dispositional order.

## FACTUAL BACKGROUND[1]

On the afternoon of May 26, 2019, Napa Police Officers O'Mary and Medina were on a bicycle assignment at the BottleRock music festival. As they were patrolling the outer perimeter of the festival, they came to a stop at the front entrance, where they began to moderate the flow of people arriving at and leaving the festival. There was a significant police presence in the area, with two California Highway Patrol officers standing near the main gate about 50 feet away, another California Highway Patrol K-9 officer right in front of the main gate about 75 feet away, and two police officers every block or two.

As they were managing the crowd, O'Mary saw a car pull up and four youths get out. They walked to the sidewalk, and one of them, Joseph, sat down on a concrete wall facing O'Mary's direction. O'Mary, who was about 20 feet away, could see Joseph had something in his mouth that, in the officer's experience, appeared to be a hand rolled cigarette or marijuana joint. O'Mary was looking at Joseph to identify what was in his mouth when Joseph looked in his direction and quickly reached up, cupped the item in his hand, took it out of his mouth, and brought it down to his lap. O'Mary watched Joseph for 30 to 60 seconds, and Joseph just carried on, still holding the object in his closed hand, which made it appear to the officer he was trying to conceal it.

---

[1] We derive the facts from testimony given at the hearing on Joseph's motion to suppress.

O'Mary decided to talk to Joseph to determine what the object was, so he walked up to him and asked how old he was and what was in his hand. Joseph responded that he was 16 years old and that it was a marijuana joint, opening his hand to reveal what he was holding. Because it was a violation of the law for an individual under the age of 21 to possess marijuana, O'Mary took the joint and asked Joseph for identification. Joseph produced an Arizona identification card, explaining he lived locally but had lived in Arizona for a short time. O'Mary thought that "was a little bit off . . . [b]ut it wasn't a huge issue at that time."

O'Mary asked Joseph if he had any more marijuana on him, and Joseph said he did not. O'Mary then asked him to remove a backpack he was wearing. Joseph complied, and O'Mary placed it on the concrete wall and then "eventually ended up searching" it, explaining:

"I searched the backpack to look, to attempt to locate additional marijuana. From my training and experience people that possess marijuana, especially a marijuana joint, you don't buy a marijuana joint. That's very uncommon. People typically are buying what is called a dime sack, just a $10 bag of marijuana, a dub sack, which is [a] $20 bag of marijuana, quarter ounce, an eighth ounce, quarter ounce, half ounce, or in this case an ounce bag of marijuana. People buy in these quantities and then break them down to use them in their desired amounts.

"Also from my training and experience people possess and carry these amounts of marijuana with them as they travel out, be it on a bicycle or on foot or in a vehicle. It's very common if you find a small usable amount of marijuana, there to be additional marijuana accompanying them."

As O'Mary was searching Joseph's backpack (about six to eight minutes into the encounter), Joseph asked Medina if he was under arrest or was going

3

to go to juvenile hall. O'Mary told him he was going to be cited and released. As O'Mary described it: "[H]e seemed kind of antsy . . . his legs were moving as he was sitting there. And I kind of told him, 'just relax. We are going to get you identified and get you a ticket and get you out of here.' It was like we were in a very busy area with a lot of different people and a lot of different avenues of escape. And the juvenile appeared to be in really good physical condition. It was my concern that, you know, he may be fearful that he's in some big trouble, and he may try to leave or run. And earlier during this event, in past years, or actually this year and past years, I have had people flee on foot from me, you know, while on a bicycle at this event."

In Joseph's backpack, O'Mary found a 750-milliliter bottle of vodka, a plastic baggie containing "a large amount of marijuana, approximately an ounce of marijuana," a jar that contained marijuana, a heat-sealed package containing three or four marijuana joints, and a pill bottle containing a single pill. Joseph said it was pain medication for a recent injury to his hand. The prescription label on the bottle had been removed, but O'Mary determined the pill was a controlled substance.

After discovering the items in the backpack, O'Mary decided to arrest Joseph. Asked at the suppression hearing, "And you only decided to arrest him after you found the additional items in the backpack?" O'Mary confirmed, "Yeah. It was the totality of everything that was there. You know, with the large amount of marijuana, full bottle of alcohol, you know, a pain pill and being in the company of other juveniles, who appeared to be younger than him was not a good recipe."

Medina placed Joseph in handcuffs and escorted him to a nearby police car. O'Mary asked Joseph if he had anything else illegal in his possession, and Joseph said he had a knife in his sock, which Medina retrieved.

4

## PROCEDURAL BACKGROUND

A Welfare and Institutions Code section 602, subdivision (a) petition filed on May 29, 2019, alleged Joseph committed four offenses: (1) felony possession of a dirk or dagger; (2) felony possession of a controlled substance; (3) misdemeanor possession of an alcoholic beverage by minor; and (4) possession of marijuana 28.5 grams or less. The fourth count—possession of marijuana—was an infraction in violation of Health & Safety Code section 11357.[2]

On June 5, Joseph filed a motion to suppress evidence illegally obtained on May 26.

In an opposition filed June 13, the prosecutor argued that O'Mary's initial contact with Joseph was consensual, Joseph's detention was lawful, O'Mary had probable cause for custodial arrest, and he conducted a search incident to lawful arrest.

Joseph's motion came on for hearing on June 18. Joseph's counsel argued that he had been detained so a limited search for weapons was permissible, but O'Mary's testimony made it clear that what he conducted was not a weapons search, and Joseph did not give free and voluntary consent for the search. According to counsel, probable cause for an arrest did

---

[2] The petition alleged that count four was a violation of Health and Safety Code section 11357, subdivision (b)(1). However, subdivision (b)(1) concerns possession by a minor of 28.5 grams *or more*, while subdivision (a)(1) concerns possession by a minor of 28.5 grams *or less*. It thus appears subdivision (a)(1) was the applicable provision, although both offenses are infractions, albeit with different punishments.

5

not arise until the backpack was searched, and because Joseph was arrested based on the contents of the backpack, the search was not incident to arrest.[3]

The court asked if it was accurate that once Joseph admitted he possessed marijuana, he was in violation of the Health and Safety Code, which constituted sufficient grounds to arrest him, and that under *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, a search incident to arrest for an infraction did not violate the Fourth Amendment. Joseph's counsel responded that O'Mary admitted he had no intention of arresting Joseph based on the joint he had in his hand and only decided to arrest him after he searched the backpack.

The prosecutor disagreed that O'Mary's subjective intent was relevant: "It's objective what a reasonable officer could have done in this situation. And a reasonable officer in this situation could arrest him on the spot for that marijuana joint."

Following that brief argument, the trial court denied the motion, stating:

"The Court will deny the motion to suppress given that a reasonable officer could have arrested Joseph for the infraction. The officer had the ability to conduct a search incident to arrest, and as you know the arrest can occur immediately afterwards. There does have to be probable cause to arrest prior to the search. And the officer had that.

"And looking at this in a slightly different way, even if this were a

---

[3] Joseph's opening brief on appeal likewise argues that the officers lacked probable cause for an arrest prior to the search. In a supplemental reply brief, Joseph clarifies that he "no longer advances a claim that the officer lacked probable cause to arrest him for a citation-only offense under the Fourth Amendment."

non-custodial arrest, then *People v. Coleman*[4] would apply. And in that case the officer has the ability to conduct a search for evidence of the crime, contraband or stolen goods and weapons.

"And Officer O'Mary's testimony about his training and experience that if there is one marijuana joint, that there is often more marijuana, that would give him reason to search the backpack for contraband."

On September 17, Joseph filed a motion for reconsideration of his suppression motion. The motion was brought by new counsel for Joseph on the ground that his prior counsel did not present argument regarding *People v. Macabeo* (2016) 1 Cal.5th 1206 (*Macabeo*) in connection with the initial motion.

On September 24, the matter came on for a hearing on Joseph's reconsideration motion and for a contested jurisdictional hearing. After hearing argument, the court denied the motion. Relying primarily on *Coleman*, *supra*, 229 Cal.App.3d 321 and *People v. Brocks* (1981) 124 Cal.App.3d 959 (*Brocks*), it again reasoned that someone who commits an infraction can be arrested, and since Joseph committed an infraction, O'Mary could search him incident to arrest.

The contested jurisdictional hearing followed, at the conclusion of which the court found all four counts to be true. It granted Joseph's motion to reduce count 1 to a misdemeanor, and ordered the matter transferred to Solano County (Joseph's county of residence).

On November 15, the Solano County juvenile court adjudged Joseph a ward of the court and placed him under the supervision of the probation department in his mother's home.

This timely appeal followed.

---

[4] *People v. Coleman* (1991) 229 Cal.App.3d 321 (*Coleman*).

7

After briefing was complete, Joseph, again represented by new counsel, requested leave to file supplemental briefing to address issues not fully developed by his prior counsel. We granted his request, and supplemental letter briefs were filed by both parties.

## DISCUSSION

**The Fourth Amendment and the Standard of Review**

We review issues relating to the suppression of evidence obtained in a governmental search under federal constitutional standards. (*People v. Troyer* (2011) 51 Cal.4th 599, 605.) "The Fourth Amendment to the federal Constitution prohibits *unreasonable* searches and seizures." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 365.) As the United States Supreme Court has stated, " '[T]he ultimate touchstone of the Fourth Amendment is "reasonableness." ' [Citation.] Our cases have determined that '[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.' . . . In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." (*Riley v. California* (2014) 573 U.S. 373, 381–382.) "One such exception is a search incident to lawful arrest. . . . [¶] . . . [¶] A search incident to arrest 'has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained.' " (*Macabeo*, *supra*, 1 Cal.5th at pp. 1213–1214.) The People bear the burden of establishing that the exception applies. (*People v. Schmitz* (2012) 55 Cal.4th 909, 933.)

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings.

' "On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court that are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions." ' " (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)

### The Search of Joseph's Backpack Violated the Fourth Amendment Prohibition Against Unreasonable Searches

As noted above, and as recognized long ago, a warrantless search incident to arrest is generally permissible under the Fourth Amendment. (*People v. Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 812 ["It is now settled that as an incident to a lawful arrest, a warrantless search limited both as to time [citation] and place [citation] may be made"].) The question here is whether the Fourth Amendment permits a warrantless search where there was probable cause for an arrest, but the offense was an infraction and the officer intended to issue a citation rather than effectuate a custodial arrest. In *Macabeo, supra*, 1 Cal.5th 1206, our Supreme Court recently answered this question in the negative. *Macabeo* and cases discussed therein are equally applicable to the facts here and compel us to conclude that the search of Joseph's backpack ran afoul of the Fourth Amendment.

In *Macabeo, supra*, 1 Cal.5th 1206, two officers were on patrol early one morning when they spotted Macabeo riding a bicycle. They were following him with their headlights off when they observed him fail to stop at a stop sign, a Vehicle Code infraction that provided for a citation but not arrest. They activated their overhead lights and stopped him. One of the officers asked Macabeo a series of standard questions, which he answered, although he gave inconsistent responses about his probation status. When asked to walk toward the police car, put his hands up, and spread his feet, Macabeo

9

offered that he had nothing illegal on him.  One officer asked if he had " 'any problem with me taking stuff out of your pockets,' " and he responded, " 'go ahead.' "  The officer removed a number of items, including Macabeo's phone. He gave the phone to the second officer, who searched it and discovered images of underaged girls.  Macabeo was arrested for possession of the photos.  (*Id.* at pp. 1210–1212.)

The trial court denied a motion by Macabeo to suppress the photographs.  It accepted the prosecutor's argument that the search of the phone was constitutional because Macabeo was lawfully searched incident to arrest since he "*could have been*" arrested for running the stop sign.  The Court of Appeal affirmed.  (*Macabeo*, *supra*, 1 Cal.5th at p. 1212.)

Our Supreme Court reversed, rejecting the People's successful argument below that the search constituted a permissible search incident to arrest because the officers could have arrested Macabeo for failing to stop at the stop sign.  (*Macabeo*, *supra*, 1 Cal.5th at pp. 1217–1219.)  In advancing this argument, the People relied on *Rawlings v. Kentucky* (1980) 448 U.S. 98 (*Rawlings*), in which the United States Supreme Court, in upholding a warrantless search, stated, "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." (*Id.* at p. 111.)  According to the *Macabeo* Court, the People "read far too much into the *Rawlings* comment about the order in which discovery of probable cause is made and the effectuation of a formal arrest takes place.  In *Rawlings*, the court concluded there was probable cause to arrest based on his voluntary statements made before any search of his person.  [Citation.] *Rawlings* merely established that when an arrest is supported by probable cause, after-acquired evidence need not be suppressed because an otherwise

10

properly supported arrest was subsequently made formal."[5]  (*Macabeo* at p. 1217.)

*Macabeo* also found the People's argument to be "in tension" with *Knowles v. Iowa* (1998) 525 U.S. 113 (*Knowles*).  (*Macabeo, supra*, 1 Cal.5th at pp. 1217–1219.)  Knowles was stopped for speeding in Iowa.  The police officer issued him a citation, although Iowa law also permitted the officer to arrest him.  The officer then conducted a full search of Knowles's car, found drugs and drug paraphernalia, and arrested him.  (*Knowles*, at p. 114.)  Knowles moved to suppress the evidence recovered from his car, arguing "that the search could not be sustained under the 'search incident to arrest' exception . . . because he had not been placed under arrest."  The trial court upheld the search on the grounds that Iowa law authorized the police officer to arrest defendant or issue a citation and also provided that "the issuance of a citation in lieu of an arrest 'does not affect the officer's authority to conduct an otherwise lawful search.' "  (*Id.* at pp. 114–115.)  The Iowa Supreme Court affirmed, "reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest."  (*Id.* at pp. 115–116.)

The United States Supreme Court reversed.  It began its analysis by recognizing the "two historical rationales for the 'search incident to arrest' exception:  (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial."

---

[5] In *Rawlings, supra*, 448 U.S. 98, officers entered a home to serve an arrest warrant.  While there, they smelled marijuana smoke and observed marijuana seeds.  They obtained a search warrant and asked one of the occupants of the house to empty her purse.  She did so, revealing various drugs.  She told Rawlings to take what was his, and he admitted the drugs belonged to him.  Officers then searched Rawlings, found substantial cash and a knife, and arrested him.  (*Id.* at pp. 100–101.)

11

(*Knowles*, *supra*, 525 U.S. at p. 116.)  And it concluded that once the citation was issued neither rationale justified the search.  (*Id.* at pp. 117–118.)  As to officer safety, the Court explained that the threat from issuing a traffic citation "is a good deal less than in the case of custodial arrest" since a routine traffic stop is "a relatively brief encounter" while a custodial arrest involves " 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.' "  (*Id.* at p. 117.)  With respect to evidence preservation, the Court reasoned there was no evidence related to the offense to be preserved since "[o]nce Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained.  No further evidence of excessive speed was going to be found . . . ."  (*Id.* at p. 118.)

After discussing *Rawlings*, *Knowles*, and other cases (including *Virginia v. Moore* (2008) 553 U.S. 164, *United States v. Chadwick* (1977) 433 U.S. 1, *Chimel v. California* (1969) 395 U.S. 752, and *Riley v. California*, *supra*, 573 U.S. 373), *Macabeo* then summarized their significance, as follows:

"These cases, taken together, stand for the following principles.  When a custodial arrest is made, and that arrest is supported by independent probable cause, a search incident to that custodial arrest may be permitted, even though the formalities of the arrest follow the search.  (*Rawlings*.)  There is no exception for a search incident to citation.  (*Knowles*.)  If an actual arrest takes place, a search incident to that arrest is allowed if it is supported by federal Fourth Amendment jurisprudence, more restrictive state law notwithstanding.  (*Moore*.)  Even the search incident exception may be limited when attendant circumstances show the arrestee had no potential

12

to put an officer in jeopardy, to escape, or to destroy evidence. (*Chimel*, *Chadwick*, *Riley*.)

"These authorities make clear that *Rawlings* does not stand for the broad proposition that probable cause to arrest will always justify a search incident as long as an arrest follows. Otherwise, *Knowles* would have been decided differently. The officer in *Knowles* had probable cause to arrest for a traffic infraction, but elected not to do so. (*Knowles*, *supra*, 525 U.S. at p. 114.) Once it was clear that an arrest was *not* going to take place, the justification for a search incident to arrest was no longer operative." (*Macabeo*, *supra*, 1 Cal.5th at pp. 1218–1219.)

Applying these principles to the circumstances of Macabeo's case, our Supreme Court concluded that the facts there were "analogous to *Knowles*, and the high court's rationales for not applying the incident search exception have equal force here." (*Macabeo*, *supra*, 1 Cal.5th at p. 1219.) According to the Court, the threat to the officers that stopped Macabeo was the same as the threat to the officer in *Knowles*, and "these officers were no more likely to find additional evidence of his failure to stop at a stop sign by searching him than the officers in *Knowles* were likely to find evidence of speeding." Thus, the Court concluded that the search did not qualify as incident to arrest under the Fourth Amendment.[6] (*Ibid*.)

---

[6] In his supplemental letter brief, Joseph cites as "critical" the following statement by the *Macabeo* court: "Nor does it appear that there are objective indicia to suggest, as the People's argument presumes, that the officers would have arrested defendant in violation of state law." (*Macabeo*, *supra*, 1 Cal.5th at p. 1219.) Based on this, he proposes that we adopt the following rule: "[T]he search incident to arrest doctrine authorizes a pre-arrest search of a person and items within reaching distance where there are objective indicia to suggest an officer would have arrested—and not simply cited and/or released—the person based on information known to the officer prior to the initiation of the search." The statement on which Joseph relies was made in

13

*Macabeo* compels reversal here. It is enough to echo the Court's takeaway from *Knowles*: "There is no exception for a search incident to citation." (*Macabeo, supra,* 1 Cal.5th at p. 1218.) O'Mary's testimony at the suppression hearing—that he told Joseph they were going to "get [him] a ticket and get [him] out of here"—confirmed that he did not intend to arrest Joseph for possession of the joint.[7] The People claim he made this statement "because [Joseph] seemed 'antsy', and O'Mary feared [he] might flee, not because he actually intended to cite and release" Joseph. This claim is contradicted by O'Mary's testimony that he decided to arrest Joseph only *after* he searched the backpack. When asked, "And you only decided to arrest him after you found the additional items in the backpack?" he responded, "Yeah. It was the totality of everything that was there. You know, with the large amount of marijuana, full bottle of alcohol, you know, a pain pill and being in the company of other juveniles, who appeared to be younger than him was not a good recipe." While O'Mary may have had other options (see, e.g., Welf. & Inst. Code, § 625, subd. (a)), it is clear he intended to issue a citation, nothing more.

Beyond that, the rationales for the search incident to arrest exception do not apply here. The threat to officer safety was minimal since the

_____

the context of distinguishing Macabeo's situation from *Virginia v. Moore, supra,* 553 U.S. 164, and was not the *Macabeo* court's endorsement of the rule Joseph proposes.

[7] We are cognizant that an officer's subjective intentions "play no role in ordinary, probable-cause Fourth Amendment analysis." (*Whren v. United States* (1996) 517 U.S. 806, 813; accord, *Devenpeck v. Alford* (2004) 543 U.S. 146, 153 ["an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"]; *People v. Ovieda* (2019) 7 Cal.5th 1034, 1052.) But O'Mary's intention in this regard goes not to the question of probable cause but to whether this was a search incident to a citation or a search incident to an arrest.

14

issuance of the citation was to be "a relatively brief encounter." (*Knowles*, *supra*, 525 U.S. at p. 117; accord, *Macabeo*, 1 Cal.5th at p. 1219.) Further, there was significant law enforcement present in the nearby surrounds. As to the preservation of evidence of a crime, possession of marijuana by a minor is an infraction whether the minor has 28.5 ounces or less (Health & Saf. Code, 11357, subd. (a)(1)) or more than 28.5 ounces (*id.*, § 11357, subd. (b)(1)), as are possession by a minor for sale (*id.*, § 11359, subd. (a)) and unlawful transportation, importation, sale, or gift (*id.*, § 11360, subd. (a)(1)). Thus, Joseph's offense was going to be an infraction whether or not O'Mary searched him and found additional marijuana.

A recent decision by our colleagues in Division Three provides further support for our conclusion. In *In re D.W.* (2017) 13 Cal.App.5th 1249, three San Francisco police officers were patrolling an area in response to a report of someone with a firearm. They saw a number of individuals with known gang affiliations standing on a corner in rival gang territory. Concerned about the possibility of violence, the officers made contact with the group, which included D.W. One of the officers smelled marijuana on D.W.'s clothes and breath and commented that he smelled like marijuana. D.W. admitted he had just smoked some. The officers decided to search him for more marijuana and told him to put his hands on his head. When D.W. responded by trying to pull away, one of the officers put his hand underneath D.W.'s backpack and felt a revolver. The officers handcuffed D.W. and removed the revolver from the backpack. After the search, the officers determined D.W. was 17 years old. (*Id.* at p.1251.)

The trial court denied D.W.'s move to suppress the weapon (*In re D.W.*, *supra*, 13 Cal.App.5th at p. 1251), but the Court of Appeal reversed. It relied on the principles summarized in *Macabeo*, most notably that " '[t]here is no

15

exception for a search incident to citation.' " (*In re D.W.*, *supra*, 13 Cal.App.5th at p. 1253, quoting *Macabeo*, *supra*, 13 Cal.App.5th at p. 1218.)  And it concluded that "the search fails to satisfy the Fourth Amendment because when officers decided to search D.W., they had neither cause to make a custodial arrest nor evidence that he was guilty of anything more than an infraction." (*In re D.W.* at p. 1253.)  Instead, the court explained, the officers "searched D.W. because he smelled like marijuana and admit[ted] to recently smoking some.  But at the time of this search in 2015, possession of less than 28.5 grams of marijuana was an infraction punishable by a fine of not more than $100.  (Health & Saf. Code, § 11357, former subd. (b).)  Under California law ingestion or possession of marijuana was a minor, nonjailable offense.  (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1037.)  Moreover, even if the officers could reasonably conclude that the smell of marijuana and D.W.'s admission that he just smoked some meant he had more, it would have been mere conjecture to conclude that he possessed enough to constitute a jailable offense." (*Ibid.*)

Joseph's situation differs from that in *In re D.W.* in that the officers there lacked probable cause for an arrest, while here Joseph's possession of marijuana constituted probable cause.  But that distinction does not render *In re D.W.* inapposite.  *In re D.W.* reiterated what the Supreme Court recognized in *Macabeo*:  "a lawful arrest supported by probable cause provides authority for a search, but that 'there is no exception for a search incident to citation.' " (*In re D.W.*, *supra*, 13 Cal.App.5th at p. 1252.)  Here, there was no lawful arrest, and thus no authority for a search.

While these California authorities provide ample support for our conclusion, we find further affirmation of our position in *State v. Lee* (2017) 402 P.3d 1095 (*Lee*), where the Supreme Court of Idaho considered whether

16

an officer had probable cause for a search incident to arrest where the officer "*could have*" arrested Lee for driving without privileges but instead told him he was going to issue a citation and *then* searched him and found drug-filled containers. (*Id.* at pp. 1099, 1103.) The facts of that case were these: An officer saw Lee driving and suspected, due to a prior encounter, that he was driving without a valid license. After Lee came out of a store, the officer made contact with him and asked for his driver's license. Lee began patting his pockets and said he did not have his license on him. The officer did a pat-down search for weapons and felt several cylindrical items in a pocket, which he removed. One of the items was a pocketknife, the other two were containers that the officer believed contained contraband. The officer told Lee that he was " 'detained right now' " and " 'he was 'going to get a citation for driving without privileges,' " and placed him in the patrol car. He then examined the containers which did, in fact, contain contraband. He arrested Lee for drug-related offenses and driving without privileges. (*Id.* at p. 1099.)

Noting that Lee's appeal from the denial of a suppression motion asserted only federal constitutional claims (*Lee, supra*, 402 P.3d at p. 1100), the court discussed *Knowles, supra*, 525 U.S 113 at length. (*Lee*, at pp. 1103–1104.) After observing that "the only difference between *Knowles* and this case is that Knowles was issued a citation before the search," the court agreed with Lee that "the distinction between actually issuing a citation and stating that a citation will be issued is a distinction without a difference because the historical rationales [for a search incident to arrest] are not present in both situations—when a citation is actually issued and when an officer states that he is going to issue a citation." (*Lee, supra*, 402 P.3d at p. 1104.) As those rationales applied to that case, there was no need for evidence preservation since "all the evidence that was needed to issue Lee a

17

citation for driving without privileges had already been obtained before the search," and the officers had already frisked Lee for weapons and he knew that "no other weapons would be found in the containers" because they were containers that would typically contain contraband. (*Ibid.*)

The *Lee* court also discussed out-of-state authorities holding "that the search incident to arrest exception should not apply when no arrest is to take place." (*Lee*, *supra*, 402 P.3d at p. 1104.) These decisions included *People v. Reid* (N.Y. 2014) 26 N.E.3d 237, 239 ("It is irrelevant that, because probable cause existed, there *could* have been an arrest without a search. A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not"); *State v. Taylor* (Ariz. Ct. App. 1990) 808 P.2d 324, 325 (officers are not "free to search anyone they might arrest but have no intention of arresting under a search incident to arrest theory"); and *Macabeo*, *supra*, 1 Cal.5th 1206. (*Lee*, *supra*, at p. 1105.) After agreeing with the rationale of *Reid*, *Taylor*, and *Macabeo*, the *Lee* court stated: "The reasonableness of a search is determined by the totality of the circumstances, and a search incident to arrest is not reasonable when an arrest is not going to occur. We determine if an arrest is going to occur based on the totality of the circumstances, including the officer's statements. While the subjective intent of an officer is usually not relevant in Fourth Amendment analysis, statements made by the officer of his intentions along with other objective facts are relevant in the totality of circumstances as to whether an arrest is to occur. If an arrest does not occur, and objectively the totality of the circumstances show an arrest is not going to occur, an officer cannot justify a warrantless search based on the search incident to arrest exception." (*Lee*, at p. 1105.)

Applying that standard, the *Lee* court concluded that the search of Lee's containers was unlawful. The officer told Lee he was going to be cited for driving without privileges. It was only after the officer searched him and discovered the containers of drugs that he decided to arrest him. These circumstances, the court said, showed that no arrest was going to happen prior to the search, the search was thus incident only to a citation, and the search incident to arrest exception to the warrant requirement did not apply. (*Lee*, *supra*, 402 P.3d at pp. 1105–1106.) That was the situation here: O'Mary told Joseph he was going to be cited for possession of the joint; it was only after O'Mary searched Joseph's backpack and found alcohol and additional drugs that he decided to arrest him. As in *Lee*, these circumstances "show[ed] that no arrest was going to [happen prior to the search], the search was [thus] incident only to an intended citation, . . . and the search incident to arrest exception to the warrant requirement did not justify the search." (*Ibid.*)

The juvenile court here primarily relied on a trio of cases—*Atwater v. City of Lago Vista*, *supra*, 532 U.S. 318, *Coleman*, *supra*, 229 Cal.App.3d 321, and *Brocks*, *supra*, 124 Cal.App.3d 959—to deny Joseph's motion. The People rely on them as well. None of those cases justified O'Mary's search. *Atwater* held that the Fourth Amendment did not forbid a warrantless arrest for a misdemeanor seatbelt violation punishable by a fine. (*Atwater*, *supra*, 532 U.S. at p. 323.) This has no bearing on whether the Fourth Amendment permits a search incident to a citation where the offender committed only an infraction and the officer did not intend to make an arrest.

As to *Coleman*, *supra*, 229 Cal.App.3d 321 and *Brocks*, *supra*, 124 Cal.App.3d 959, neither case involved the commission of an infraction, which was the basis of O'Mary's decision to cite, rather than arrest, Joseph.

Instead, both involved officers searching for evidence of the jailable offense they had reason to believe defendant committed—again, not the situation here.

As they did in *Macabeo*, the People also rely on the statement in *Rawlings* that "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." (*Rawlings, supra*, 448 U.S. 98 at p. 111.) According to them, under *Rawlings*, the fact the "officers did not formally arrest [Joseph] until after the search of the backpack is immaterial, because O'Mary had probable cause to arrest [him] based on [his] admission that he possessed a marijuana joint." But, as discussed above, *Macabeo* already rejected this reading of *Rawlings*. (*Macabeo, supra*, 1 Cal.5th at p. 1217)

In a nutshell, a " 'search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not.' " (*People v. Lee, supra*, 402 P.3d at p. 1105, quoting *People v. Reid, supra*, 26 N.E.3d at p. 239.) As O'Mary only intended to cite Joseph, the search incident to arrest exception did not apply. The warrantless search of Joseph's backpack thus violated the Fourth Amendment.

**The True Findings on All Counts Must Be Reversed**

Joseph urges us to reverse the juvenile court's jurisdictional findings on all four counts, as well as the resulting dispositional order. The People argue that the true findings as to counts 1 and 4 should not be reversed, implicitly conceding that reversal of counts 2 and 3 is warranted if we conclude, as we do, that the search was unlawful. We believe Joseph is correct: the true findings on all counts must be reversed.

As to count 1 (possession of a dirk or dagger), the People assert that the exclusionary rule should not apply to the knife recovered from Joseph's sock because of the inevitable discovery rule.  Pursuant to that rule, evidence seized in violation of the Fourth Amended need not be excluded "if the prosecution can establish by a preponderance of the evidence that the information would inevitably have been discovered by lawful means." (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1040; accord, *Nix v. Williams* (1984) 467 U.S. 431, 444.)

In support of their claim that the inevitable discovery rule should apply to the knife, the People argue only this:  "O'Mary testified that he found the knife in appellant's sock after asking appellant if 'there was anything additional illegal on his person,' to which appellant responded that there was a knife in his sock.  [Citation.]  Though the officer posed this question after searching appellant's backpack, the evidence suggested he would have posed the question based on the marijuana joint alone.  As previously explained, O'Mary's observations of appellant with the marijuana joint and appellant's admission that he possessed marijuana led the officer to believe appellant had additional marijuana on his person.  Even assuming the illegality of the search of the backpack, O'Mary did not exploit that illegality to obtain appellant's admission that he had a knife.  (See *Wong Sun v. United States* (1963) 371 U.S. 471, 488 ['the more apt question [in determining whether to suppress "fruit of the poisonous tree" evidence] is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" [Citation]'); see also *People v. Avila* (1997) 58 Cal.App.4th 1069, 1075 ['[t]he Fourth Amendment was not designed to protect a defendant from his own

21

candor'].)" The People have not established that the knife would have been discovered by legal means.

Joseph admitted possession of the knife only after the illegal search of his backpack and after he had been placed in handcuffs. It is pure speculation that had O'Mary proceeded with citing Joseph for possession of the joint he also would have asked Joseph if he had anything else illegal on him and, further, that Joseph would have responded with candor. (See *People v. Wallace* (2017) 15 Cal.App.5th 82, 95.) The prosecutor could have developed a record on this at the suppression hearing, but did not do so. The People's speculation now is inadequate to make the requisite showing.

As to count 4 (possession of 28.5 ounces of marijuana or less), the People argue that "the search of the backpack had no bearing on [Joseph's] guilt for this allegation [and] it need not be reversed." But for the illegal search of the backpack, however, Joseph would not have been arrested. It naturally follows that without the search, this Welfare and Institutions Code section 602, subdivision (a) proceeding would not have been commenced. Count 4 cannot thus be sustained.

## DISPOSITION

The juvenile court's jurisdictional findings and the dispositional order are reversed.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

*In re Joseph P.* (A159187)